Filed 7/22/26  Tran v. Moody CA4/3

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| JASMINE TRAN,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>QIN MOODY,<br><br>    Defendant and Appellant. | G065203<br><br>(Super. Ct. No. 30-2021-01220737)<br><br>O P I N I O N |

Appeal from a judgment of the Superior Court of Orange County, Craig L. Griffin, Judge. Affirmed.

Benice Law and Jeffrey S. Benice for Defendant and Appellant.

J. Gill Law Group and Jasmin K. Gill; Love Law and Calvin F. Love for Plaintiff and Respondent.

The jury in the underlying employment case awarded plaintiff Jasmine Tran more than $10.7 million in damages, unpaid wages, punitive damages, and statutory penalties against defendant James Hooper, her former supervisor; multiple corporate entities owned by Hooper; and appellant Qin Moody, Hooper's then-girlfriend and co-operator (with Hooper) of the medical spa where plaintiff worked, called "Don't Wait 2 Rejuvenate" (the Spa).[1] Following entry of judgment, the trial court granted in part and denied in part Moody's motion for new trial or, in the alternative, for judgment notwithstanding the verdict (JNOV). The court reduced the punitive damages award against Moody from $10 million to $4,377.50, which resulted in a total judgment against Moody of $706,007.50, exclusive of any award of interest, attorney fees or costs.

On appeal, Moody contends the judgment against her must be reversed because there is no substantial evidence to support the verdict against her, including the verdict on plaintiff's wage and hour and wrongful termination claims and the jury's awards of emotional distress and punitive damages. We affirm.

STATEMENT OF FACTS AND PROCEDURAL HISTORY

Plaintiff worked at the Spa from the date it first opened in Newport Beach in November 2018 until June 2021, when she was fired for refusing to sign a "Non-Disclosure, Non-Circumvention, Non-Employment, Non-Sue, and Non-Competition Agreement" (NDA). The proposed NDA purported to be between plaintiff, who was referred to as the "[c]onfidant"

[1] Hooper used multiple other names for the Spa, including DW2R, Skin Cell Rejuvenation, Facelift Med Spa, Growing Skincare, Innergy Development and Butterfly Facelift. Regardless of the name used, the Spa was operated by Hooper and Moody at the same location in Newport Beach throughout the relevant period.

and "independent contractor," and Hooper, both individually and on behalf of his affiliated companies and approved agents and official representatives. It required plaintiff to agree: (1) she is an independent contractor with no right to receive any benefits or health insurance; (2) she was informed Hooper has Tourette's syndrome and "will speak out unexpectedly, sometimes in an inappropriate way with sexual harassment words";[2] (3) she will not be able to sue Hooper in court; (4) any sexual harassment conversations "will not stand in a court of law"; (5) plaintiff "accepts working in this environment and accepts the 'sexual harassment' conversations with maturity and [will] not be offended by [Hooper's] opinion and/or suggestions to improve her personal image"; and (6) she is fully releasing all claims against Hooper "and/or Don't [Wait] 2 Rejuvenate, the company, or any of the company employees."

Plaintiff filed her complaint on September 13, 2021, alleging 16 causes of action against Hooper, DW2R, Inc., DW2R, LLC, and Don't Wait 2 Rejuvenate, LLC. Plaintiff alleged that during her employment at the Spa, she was sexually harassed on numerous occasions by Hooper and that, after she complained about Hooper's conduct, defendants demanded she sign the NDA and then terminated her employment when she refused to do so.

Of the 16 causes of action in the complaint, seven were alleged under California's Fair Employment and Housing Act (FEHA). They included the first, second, third, fourth, fifth, seventh, and eighth causes of action, for (1) sexual harassment—hostile work environment (Govt. Code, § 12940, subd. (j)), (2) sexual harassment—quid pro quo (*ibid.*), (3) failure to take reasonable

---

[2] Plaintiff testified at trial Hooper does not have Tourette's Syndrome, Hooper repeatedly sexually harassed her during her employment, and before being asked to sign the NDA, she had told Hooper his conduct was inappropriate and must stop.

steps to prevent sexual harassment (*id.*, § 12940, subd. (k)), (4) sex discrimination (*id.*, § 12900, et seq.), (5) retaliation (*id.*, § 12940, subd. (h)), (6) requiring plaintiff to sign an NDA and harassment agreement as a condition of employment (*id.*, § 12964.5), and (7) wrongful termination (*id.*, § 12900, et seq.). Plaintiff also alleged causes of action for retaliation under Labor Code section 1102.5 (sixth cause of action), wrongful termination in violation of public policy (ninth cause of action), and violation of Business and Professions Code section 17200 et seq. (sixteenth cause of action)

The complaint also included six wage and hour claims, including the tenth cause of action for failure to pay overtime wages pursuant to Labor Code sections 510, 1194, 1197 and applicable Industrial Wage Commission orders; the eleventh cause of action for failure to pay minimum wages pursuant to Labor Code sections 1194, 1194.2, 1197 and applicable wage orders; the twelfth cause of action for failure to provide meal periods pursuant to Labor Code sections 512, 226, 226.7, and applicable wage orders; the thirteenth cause of action for failure to provide rest periods pursuant to Labor Code sections 226.7 and applicable wage orders; the fourteenth cause of action for wage statement violations pursuant to Labor Code section 226, subdivisions (a) and (e); and the fifteenth cause of action for failure to provide wages due upon termination pursuant to Labor Code sections 201 and 202.

Multiple other defendants—including Moody, Innergy Development d/b/a Don't Wait 2 Rejuvenate (Innergy), Facelift Medspa, LLC (Facelift), Butterfly Medspa, LLC (Butterfly), SkinCellRejuvenation, LLC (SkinCell), and Growing Skincare, LLC (Growing Skincare)—were added as defendants to the action prior to trial.

The case was tried over multiple days in October 2024. The jury ultimately returned a verdict against all defendants on plaintiff's claims for

4

harassment based on a hostile work environment, failure to prevent harassment, discrimination, or retaliation, sex/gender discrimination based on disparate treatment, retaliation in violation of FEHA, whistleblower retaliation in violation of Labor Code section 1102.5, wrongful termination in violation of public policy, failure to pay overtime wages (Lab. Code, § 1194), meal and rest period violations (*id.*, §§ 226.7, 512), waiting time penalties for nonpayment of wages (*id.*, §§ 203, 218), and wage statement violations. The jury found plaintiff was entitled to punitive damages against all defendants. In addition, the jury found in favor of plaintiff against all defendants, except Moody, on plaintiff's claim for sexual harassment based on quid pro quo. The jury found in favor of all defendants on plaintiff's minimum wage claim.

The jury awarded plaintiff damages in the total amount of $10,768,381, which included $10 million in punitive damages.[3] The trial court entered judgment based on the verdict on November 27, 2024. On December 10, 2024, defendants Hooper, Moody, DW2R, LLC, Don't Wait 2 Rejuvenate, LLC, Innergy, Facelift, Butterfly, Growing Skincare and SkinCell filed a notice of their intent to move for a new trial or, in the alternative, for JNOV. They filed their joint motion on December 26, 2024, and plaintiff opposed it.

After hearing the matter and taking it under submission, the court granted the motion in part, reducing the $10 million punitive damages

---

[3] In addition to the punitive damages, the jury awarded plaintiff the following: (1) $166,220 in economic damages for past and future lost wages and earnings; (2) $500,000 in non-economic damages for past and future loss of enjoyment of life, mental suffering, anxiety, humiliation, grief, inconvenience, and emotional distress; (3) $7,680 for unpaid overtime; (4) $10,640 premium wages for missed meal breaks; (5) $10,640 premium wages for missed rest breaks; (6) $1,650 in penalties for wage statement violations; and (7) $4,800 in waiting time penalties for unpaid wages.

award against Moody to $4,377.50. Otherwise, the court denied the motion. Moody timely appealed.[4]

DISCUSSION

I.

STANDARD OF REVIEW

"On appeal from an order denying a JNOV motion, 'the standard of review is whether any substantial evidence—contradicted or uncontradicted—supports the jury's conclusion. [Citations.]' [Citation.] Accordingly, we may reverse an order denying a JNOV motion 'only if, reviewing all the evidence in the light most favorable to [plaintiff], resolving all conflicts, and drawing all inferences in her favor, and deferring to the implicit credibility determinations of the trier of fact, there was no substantial evidence to support the jury's verdict in her favor.'" (*Hurley v. Department of Parks & Recreation* (2018) 20 Cal.App.5th 634, 644.)

"A new trial shall not be granted upon the ground of insufficiency of the evidence to justify the verdict . . . unless after weighing the evidence the court is convinced from the entire record, including reasonable inferences therefrom, that the court or jury clearly should have reached a different verdict or decision." (Code Civ. Proc., § 657.) "'A trial court has broad discretion in ruling on a new trial motion, and the court's exercise of discretion is accorded great deference on appeal.'" (*Hasso v. Hapke* (2014) 227

---

[4] DW2R, Inc. filed a separate appeal from the judgment in case No. G065271.

6

Cal.App.4th 107, 119.) "'When the court denies the motion, we presume the jury's verdict is correct.'" (*Ibid.*)

## II.

### SUBSTANTIAL EVIDENCE SUPPORTS THE JUDGMENT AGAINST MOODY

*A. Wage and Hour Claims*

Moody argues the award against her for unpaid wages and statutory penalties under the Labor Code must be reversed because there is insufficient evidence to support the jury's conclusion she was plaintiff's employer or "other person acting on behalf of an employer" who violated the law under Labor Code section 558.1.[5] We disagree.

First, although Moody describes the evidence she contends supports *her* position that she was not plaintiff's employer or Hooper's agent, she failed to fairly summarize *all* the evidence introduced at trial on that issue—including her involvement and role at the Spa during plaintiff's

---

[5] The jury was instructed that "'[e]mployer' means any person, who directly or indirectly, or through an agent or any other person, employs or exercises control over the wages, hours, or working conditions of any person. The definition of 'person' includes any person, association, organization, partnership, business trust, limited liability company, or corporation. [¶] Therefore, the definition of an employer under California law includes individuals. In addition, the definition of a 'person' under California law includes associations, partnerships, limited liability companies and corporations. [¶] If you find that any Individual Defendant is a person who, directly or indirectly, or through an agent or any other person, employed or exercised control over the wages, hours, or working conditions of [plaintiff], then that Individual Defendant is an 'Employer' under California law." The jury also was instructed that "the term 'other person acting on behalf of an employer' is limited to a natural person who is an owner, director, officer, or managing agent of the employer" and that the term "'Managing agent' means a person with substantial discretionary authority over decisions that ultimately determine corporate policy." Moody does not contend there was any instructional error at trial.

7

employment there. As a result, Moody has waived her challenge to the jury's verdict on the wage and hour claims. "'In every appeal, the appellant has the duty to fairly summarize all of the facts in the light most favorable to the judgment. [Citations.] "Further, the burden to provide a fair summary of the evidence 'grows with the complexity of the record. [Citation.]'" [Citation.] To meet [her] burden on appeal to show a finding of fact is not supported by substantial evidence, appellant[] cannot recite only evidence in [her] favor, but must "'set forth in [her] brief *all* the material evidence on the point and *not merely [her] own evidence*. Unless this is done the error is deemed to be waived."'"" (*In re Marriage of Nelson* (2025) 115 Cal.App.5th 904, 915–916.)

Even if the argument were not waived, it has no merit. In reviewing a jury's factual determinations for substantial evidence, we may not resolve evidentiary conflicts. (See *In re Caden C.* (2021) 11 Cal.5th 614, 640 [factual determinations should be upheld even though substantial evidence exists to the contrary].) Moody's argument that there was evidence tending to show she was *not* plaintiff's employer or "other person acting on behalf of an employer" does not mean there was no substantial evidence showing otherwise. As plaintiff correctly points out, the jury could have concluded from plaintiff's testimony alone that Moody was plaintiff's employer.

For example, plaintiff testified she worked for *both* Hooper and Moody, and that Moody was the chief financial officer of the business, ran the daily operations in the office, and was responsible for paying plaintiff and other technicians at the Spa. Among others, plaintiff, Hooper, Moody and Dr. Anh-Dao Le (the co-owner with Hooper of defendant DW2R, Inc.) were all present at the ribbon cutting ceremony for the opening of the Spa, and Moody was responsible with Hooper for opening the business. Plaintiff testified

regarding two specific checks and electronic bank payments that Moody signed and sent as payment for her work at the Spa. She also testified Moody and Hooper not only set her hours of work but also set the prices for the services plaintiff performed at the Spa. Moody was involved in the June 1, 2021 meeting at which plaintiff was presented with the NDA.[6] Indeed, it was Moody's idea to demand that plaintiff sign the NDA.

And there was more. A coworker of plaintiff's (Gustafson) also testified Moody ran the Spa, trained employees, supervised employees, set employee hours, had her own office at the Spa, and was responsible for paying Gustafson for her work at the Spa. Moody also signed the lease of the premises for the Spa as cotenant with Hooper. Although Moody denied at trial she was a tenant and testified she accidentally signed the lease agreement in the wrong place and really only intended to sign it as a witness, the jury was entitled to reject all or any part of Moody's testimony as lacking credibility. (*People v. Young* (2005) 34 Cal.4th 1149, 1181.)

B. *Wrongful Termination and Emotional Distress Damages Award*

Next, Moody contends there is no substantial evidence she had anything to do with plaintiff's termination and no substantial evidence to support the emotional distress damages awarded against her. Again, we deem Moody's arguments waived. Moody's challenge to the verdict on the wrongful termination claim and the award of emotional distress damages is supported only by her conclusory assertions that "no substantial evidence was presented to support [plaintiff's] wrongful termination claim" and "no

---

[6] Hooper testified he recorded the meeting, and his audio recording was played for the jury. Both the audio recording and a transcript were admitted into evidence.

9

substantial evidence supports the jury's $500,000 award for emotional distress damages against [Moody]." Moody provides no citation to the record or legal authority and no summary (much less a fair summary) of the evidence introduced at trial on these points.

"'[A]n appealed judgment is presumed correct, and appellant bears the burden of overcoming the presumption of correctness.' [Citation.] As a result, on appeal 'the party asserting trial court error may not . . . rest on the bare assertion of error but must present argument and legal authority on each point raised. [Citation.]' [Citations.] When an appellant raises an issue 'but fails to support it with reasoned argument and citations to authority, we treat the point as waived." (*Hearn v. Howard* (2009) 177 Cal.App.4th 1193, 1207.) By failing to do so here, Moody has waived her challenge to the judgment on the wrongful termination claim and the award of emotional distress damages. (*Ibid.*)

## C. Punitive Damages

Moody contends there was no clear and convincing evidence of conduct that would support an award of punitive damages pursuant to Civil Code section 3294. Specifically, Moody claims that because the jury found she was not liable for quid pro quo sexual harassment, punitive damages against her are not recoverable as a matter of law. The trial court correctly rejected this argument. Moody ignores the other claims for which she *was* held liable and again fails to fairly summarize the evidence introduced at trial that would support the punitive damages award against her. As the trial court pointed out when denying Moody's JNOV motion on this ground: "[T]he jury found Moody liable for sexual harassment—hostile working environment under FEHA, for failing to prevent harassment, discrimination, or retaliation, gender discrimination, retaliation, whistleblower retaliation

10

under Labor Code [section] 1102.5, and wrongful termination in violation of public policy. All of these causes of action under FEHA, as well as the common law tort of wrongful termination can support a finding of punitive damages. See, e.g., *Commodore Home Systems, Inc. v. Superior Court* (1982) 32 Cal.3d 211, 215–221."

Finally, Moody argues it was error for the trial court to allow even the reduced punitive damages award against her to stand because it was supported only by evidence of her earnings. "[A]n award of punitive damages cannot be sustained on appeal unless the trial record contains meaningful evidence of the defendant's financial condition. The absence of this evidence thwarts effective appellate review of a claim that punitive damages are excessive." (*Adams v. Murakami* (1991) 54 Cal.3d 105, 109.) Moody cites *Soto v. BorgWarner Morse TEC, Inc.* (2015) 239 Cal.App.4th 165, for the general proposition that, in most cases, evidence of earnings or profit alone are not sufficient to support an award of punitive damages ""without examining the liabilities side of the balance sheet."" (*Id.* at p. 194.)

Here, the trial court substantially reduced the punitive damages award against Moody from $10 million to $4,377.50, an amount equal to two times Moody's monthly net income. In doing so, the court noted that, although "[e]vidence of Defendants' net worth is incomplete, as only assets and income are addressed, but not outstanding debt. . . . the evidence that was introduced was sufficient to demonstrate at least a portion of Defendants' net income. Evidence was introduced that Moody earned $26,265 annually in rental income [in 2023]." We agree with the trial court. Contrary to Moody's contention, the evidence of her financial condition was not limited to her income. Moody also testified she had been living with Hooper for about eight years, during which time she had zero expenses because he was "paying

11

everything." That testimony fairly supports a conclusion Moody had no debts or liabilities that would need to be offset against her income to provide a complete picture of her financial condition. On this record, therefore, the evidence is sufficient to support the punitive damages awarded against Moody.

## DISPOSITION

The judgment is affirmed. Respondent shall recover costs on appeal.


GOODING, J.

WE CONCUR:


MOORE, ACTING P. J.


SANCHEZ, J.